IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DP CREATIONS LLC, NEVIN PRATT and DENISE PRATT,<br><br>Plaintiffs,<br>v.<br><br>STEPHANIE ORTIZ dba nlovewithreborns2011 and JACKIE ORTIZ dba heart2heartbabies,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISQUALIFY COUNSEL<br><br>Case No. 2:19-cv-948 HCN DBP<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Dustin B. Pead |

This matter is referred to the undersigned from Judge Howard Nielson, Jr. based upon 28 U.S.C. 636(b)(1)(A). (ECF No. 23, ECF No. 30.) Pending before the court is Defendants' Motion to Disqualify Counsel, F. Mark Hansen, from appearing for Plaintiffs. (ECF No. 9.) Briefing is complete and based upon Local Rule 7-1(f), the court elects to decide the motion on the basis of the written memoranda of the parties. As set forth below the court grants the motion.

## BACKGROUND

Plaintiff Denise Pratt sculpted life-like newborn dolls as a hobby. Eventually her creations became so popular that Ms. Pratt and her husband, Nevin, organized DP Creations LLC (DPC).[1] DPC became a newborn doll supply company selling "realistic-looking baby doll ("reborn") kits, doll body parts, paint, clothing, "how-to" videos, and other supplies to the reborn doll community." Complaint ¶13, ECF No. 5-5. DPC sponsored an annual show for newborn doll hobbyists called the ROSE International Doll Show in which Defendants participated.

---

[1] DP Creations LLC does business as Bountiful Baby. The court refers to DP Creations LLC as DPC in its decision.

Defendant Stephanie Ortiz makes completed reborn dolls and markets them on her website www.nlovewithreborns2011.org. A disagreement arose between Plaintiffs and Defendants following the 2018 ROSE doll show regarding promoting the ROSE show and compensation for those activities. Tensions rose, and Defendants allegedly started publishing disparaging false statements on their YouTube channels and other social media outlets. Those remarks included, among other things, allegations that Defendant did not make much money by going to the ROSE show due to high fees, that Plaintiffs were "cheaters" when judging dolls, had criminal records and that Plaintiffs were involved with polygamous groups. Defendants directed viewers to watch "Escaping Polygamy" as a place to learn about Plaintiffs and their company. *See* Complaint ¶¶ 25-40. Ms. Ortiz publicly stated that she does not want to support Plaintiff's company because it is "owned by Kingston members so yes the money goes to funding the Kingston leaders." Complaint ¶ 42.

Plaintiffs initially filed suit in Utah state court and this matter was removed to this court in late 2019. In their Amended Complaint, Plaintiffs bring claims for invasion of privacy – false light publicity, defamation, intentional interference with economic relations, breach of contract and injunctive relief. After the case was removed to federal court Defendants sought to disqualify counsel from appearing for Plaintiffs. The court turns to that motion.

## DISCUSSION

The court has the inherent power to disqualify counsel "where necessary to preserve the integrity of the adversary process." *Field v. Freedman,* 527 F.Supp. 935, 940 (D.Kan.1981). "It is well-established that ordinarily 'the control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge,' and is thus a matter of judicial discretion." *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994) (quoting *Redd v. Shell Oil Co.*, 518 F.2d

311, 314 (10th Cir. 1975)). The moving party, which are Defendants here, bear the burden on a motion to disqualify counsel. *See Parkinson v. Phonex Corp.*, 857 F.Supp. 1474 (D. Utah 1994). In some cases, an evidentiary hearing is needed before the court may enter an order disqualifying counsel. *See, e.g., Fullmer v. Harper*, 517 F.2d 20, 21 (10th Cir.1975) ("In our view the verified motion to disqualify raises ethical questions that are conceivably of a serious nature. In such circumstance a written response should be required. The trial court should then hold a full evidentiary hearing on the issues posed by the motion to disqualify and the response thereto ...."). An evidentiary hearing though is not required when the parties have fully briefed the issue and there are no disputed issues of fact or a need for additional evidence. *See Weeks v. Indep. School Dist. No. I–89 of Oklahoma City., OK., Bd. Of Educ.,* 230 F.3d 1201, 1212 (10th Cir.2000). Such are the circumstances here, the parties have fully briefed the issue, there are no material disputed issues of fact and additional evidence is unnecessary.

"A district court has broad discretion in imposing the remedy of disqualification." *Weeks,* 230 F.3d at 1211. Yet, "federal courts have treated a motion for disqualification as one that should only rarely be granted." *Parkinson*, 857 F.Supp. at 1480. Plaintiffs cite to out-of-circuit authority in seeking to establish a "strict scrutiny" and "clear and convincing evidence" standard for reviewing Defendants' motion. The court reviewed that authority and rejects Plaintiffs invitation. Instead, as noted by Tenth Circuit, motions to disqualify are governed by two factors. "First, attorneys are bound by the local rules of the court in which they appear." *Cole,* 43 F.3d at 1383. As set forth in the Local Rules, attorneys appearing before this court are bound by the Utah Rules of Professional Conduct. *See* DUCivR 83–1.5.1(a). "Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the

parties, they are decided by applying standards developed under federal law." *Cole*, 43 F.3d at 1383 (internal citations omitted).

Here, Defendants argue the basis for disqualifying Plaintiff's counsel F. Mark Hansen is found in four reasons: (1) Mr. Hansen is a "key witness to the central issue of whether [DPC] and its owners are, in fact, associated with the Kingston Group;" (2) Mr. Hansen is an "unsworn witness" whether he testifies at trial; (3) Mr. Hansen's role as counsel for the Kingston Group creates a conflict of interest in representing Plaintiffs; and (4) Mr. Hansen has committed prior violations of the rules of professional conduct.

### (i) Mr. Hansen is a necessary witness to the central issues of this case

Defendants claim Mr. Hansen's representation violates Rule 3.7(a) of the Utah Rules of Professional Conduct because they "intend to call him as hostile witness to support their defense that [Plaintiffs] and its owners are, in fact, associated with the Kingston Group." (ECF No. 9 p.7.) Rule 3.7(a) provides that:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client….." UT R RPC Rule 3.7

Whether or not a "lawyer's testimony is necessary is a fact-specific question …." Utah State Bar Ethics Advisory Opinion No. 04-02, ¶5. And, the "availability of other competent witnesses for the same testimony [does not] automatically render the named attorney 'unnecessary'." *Id.* (citation omitted).

Plaintiffs claim Defendants engaged in a series of false defamatory statements connecting them to the Kingston Group. In their Amended Complaint, Plaintiffs adamantly deny these connections asserting DPC is not a Kingston owned company and that they have not engaged "or been complicit in the alleged offensive, immoral, illegal, and criminal acts" for which they have been publicly accused. Amended Complaint ¶57. Thus, evidence as to whether or not Plaintiffs are connected to the Group will be central to the resolution of this case. Based on the record before the court, Mr. Hansen has knowledge about this issue including past association with Plaintiffs in the context of other litigation. Mr. Hansen has also represented the Kingston Group in other capacities including making statements on their behalf to the press and participating in other lawsuits. These past activities impact his current representation and the evidence in this case regarding connections between Plaintiffs and the Kingston Group or its affiliates.

The exceptions to Rule 3.7 set forth above are not applicable here. Mr. Hansen's testimony relates to a contested issue, the testimony does not relate to the nature and value of legal services and there is no demonstrated substantial hardship on the clients. The authority cited to by Plaintiff's counsel in seeking to refute Defendants position is from other jurisdictions and not persuasive.

In light of the foregoing, the court finds that Rule 3.7(a) bars Mr. Hansen from acting as an advocate at trial. This does not automatically deny Mr. Hansen from pretrial matters. Such disqualification may be appropriate, however, when that pretrial activity "includes obtaining evidence which, if admitted at trial, would reveal the attorney's dual role." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 239 F. Supp. 2d 1170, 1174 (D. Colo. 2003) (quoting *World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.,*, 866 F.Supp. 1297, 1303 (D. Colo. 1994)). In seeking to establish Plaintiff's case, Mr. Hansen will seek evidence regarding Plaintiffs claims

that they are not connected to the Kingston Group. Once more, the prior involvement Mr. Hansen has had with the Kingston Group will impact this evidence leading to a high likelihood of disclosing his dual role as both advocate and witness. This will create confusion with the jury and even potential problems for Plaintiffs if Mr. Hansen, who will testify under oath, contradicts the evidence he gathered as an advocate. Accordingly, Mr. Hansen's unique knowledge, prior connections and role as a necessary witness in this case, bar him from engaging in pretrial matters. *See id.*

### (ii) The court declines to adopt the unsworn witness rule in this case

Defendants argue that even if Mr. Hansen is not called as a witness at trial, his knowledge of the facts in this case make him an unsworn witness. Defendants rely on *United States of America v. Evanson*, 584 F.3d 904 (10th Cir. 2009) in support of their argument. In *Evanson*, the defendant was convicted for conspiracy to commit tax fraud, tax evasion and aiding and assisting in preparation of false income tax returns. The defendant appealed arguing the district court erred in disqualifying his counsel in part because of "the strong possibility that [counsel] would be an unsworn witness." *Evanson*, 584 F.3d at 908 (citation and quotations omitted). The Tenth Circuit disagreed and upheld the disqualification.

An "'attorney acts as an unsworn witness when his relationship to his client results in his having first-hand knowledge of the events presented at trial,' enabling the attorney to 'subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination.'" *Id.* (citation omitted). A counsel's performance as an advocate can be impaired in such a situation by his relationship to the events at issue. "For example, the attorney may be constrained from making certain arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the expense of the

6

client." *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993) (citation omitted). Defendants acknowledge that the unsworn witness rule is applied primarily in criminal cases, but point to authority from other circuits applying it in the civil context. *See Herrera v. Clipper Grp., L.P.*, No. 97-CIV-560 (SAS), 1998 WL 229499, at *3–4 (S.D.N.Y. May 6, 1998) (approving of the rule, but finding it inapplicable to that case); *Matthews v. LeBoeuf, Lamb, Greene & MacRae*, 902 F. Supp. 26, 29–30 (S.D.N.Y. 1995) (acknowledging the "potential dangers of unsworn witnesses in any action," but finding insufficient danger in that context); *Kobarid Holdings, S.A. v. Reizen*, No. 03- 23269-CIV, 2005 WL 8169268, at *9–10 (S.D. Fla. Apr. 1, 2005) (applying the rationale of the unsworn witness rule to a civil case).

Because there is no precedent in the circuit applying this rule in civil proceedings, and given that the court has already determined Mr. Hansen is precluded from participating in pretrial matters under Rule 3.7, the court declines to adopt the unsworn witness rule in this case.

### (iii) Mr. Hansen's conflict of interest is not apparent on the record at this time

Defendants next argue that Mr. Hansen has a conflict of interest in representing Plaintiffs because he has acted as "house counsel" to the Kingston Group representing them over many years. Plaintiff's counsel disputes this assertion arguing he has "never been house counsel to Davis County Cooperative Society, Inc. (DCCS)." (ECF No. 14 p. 9.) And, that he does not have a conflict of interest with present or former clients.

Rule 1.7 of the Utah Rules of Professional Conduct provides that a "lawyer shall not represent a client if the representation involves a concurrent conflict of interest." UT R RPC Rule 1.7. The Rule further provides examples of certain situations where a concurrent conflict of interest exists. For example, where the representation of one client will be directly adverse to another client. Or, where there is a "significant risk that the representation of one or more clients

will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." *Id.*

Rule 1.9 of the Utah Rules of Professional Conduct sets forth duties owed to a former client. These include: not representing another person in the same or a substantially related matter where that person's interests are materially adverse to those of a former client; not using information relating to the representation to the disadvantage of a former client; and revealing information relating to the representation. UT R RPC Rule 1.9.

There is not a clear conflict of interest on the record at this point, which warrants disqualification under Rule 1.7 or 1.9. Perhaps, as the case progresses past its relative infancy, evidence will arise demonstrating such a conflict of interest. The court does take judicial notice of the many appearances Mr. Hansen has made for the Kingston Group or DCCS. As noted by Defendants, Mr. Hansen has participated in other lawsuits and represented the Kingston Group to the press on multiple occasions. As set forth above, these activities implicate Rule 3.7 of the Utah Rules of Professional Conduct and make him a necessary witness.

### (iv) **Mr. Hansen's prior violations of the rules of professional conduct are not central to the court's decision**

All attorneys practicing before the court are bound by the Utah Rules of Professional Conduct and "the term 'officer of the court' as used in the attorney oath is meant to remind attorneys of their duties of honesty, professionalism, and civility towards the court." *Sexton v. Poulsen & Skousen P.C.*, 372 F. Supp. 3d 1307, 1318 (D. Utah 2019). The court reviewed the decisions cited to by Defendants where Mr. Hansen was subject to criticism from the court and found to have violated the rules of professionalism. Although such cases create concern, the

court's decision here does not rest upon Mr. Hansen's prior conduct. Therefore, the court need not fully consider Defendants argument that these prior violations disqualify Mr. Hansen.

**ORDER**

Based upon the foregoing, Defendants' Motion to Disqualify Counsel (ECF No. 9.) is GRANTED. Mr. Hansen is disqualified from appearing for Plaintiffs.

IT IS SO ORDERED.

DATED this 16 March 2020.

_____
Dustin B. Pead
United States Magistrate Judge